**WOODLAND PRIVATE STUDY GROUP, Minnesota Mining and Manufacturing Company, and Rohm and Haas Company, Appellants in No. 85–5761,**

**Purex Industries, Inc., Plaintiff/Intervenor, Appellant in No. 85–5784,**

v.

**STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION, Robert E. Hughey, individually and as Commissioner of Environmental Protection and Joseph A. Rogalski, individually and as Assistant Director Division of Waste Management, Department of Environmental Protection.**

Nos. 85–5761, 85–5784.

United States Court of Appeals,
Third Circuit.

Argued Oct. 16, 1986.
Decided May 23, 1988.

William H. Hyatt, Jr. (Argued), Robert G. Rose, William J. Friedman, Pitney, Hardin, Kipp & Szuch, Morristown, N.J., for Woodland Private Study Group, Minnesota Min. and Mfg. Co., and Rohm and Haas Co.

Genevieve K. LaRobardier, Margolis, Chase, Kosicki, Aboyoun & Hartman, P.A., Verona, N.J., David R. Berz, Weil, Gotshal & Manges, Washington, D.C., for Purex Industries, Inc.

W. Cary Edwards, Atty. Gen. of New Jersey, James J. Ciancia, Asst. Atty. Gen., Ross A. Lewin (Argued), Deputy Atty. Gen., Richard J. Hughes Justice Complex, Trenton, N.J., for appellees.

Before GIBBONS, Chief Judge, BECKER, Circuit Judge, and FULLAM, District Judge *.

## OPINION OF THE COURT

GIBBONS, Chief Judge:

In this case, the district court rejected a claim that the New Jersey Spill Compensation and Control Act, N.J.Stat.Ann. 58:10–23.11 *et seq.* (West 1982 & Supp.1987), violates the due process clause of the federal constitution. While this appeal was pending, the New Jersey Supreme Court performed "judicial surgery" on the Spill Act in order to avoid constitutional difficulties. We will, therefore, vacate the judgment of the district court and remand with instructions to dismiss the complaint as moot.

## I

During the late 1950's and early 1960's several industrial concerns engaged the Industrial Trucking Service Company to dump toxic wastes at two disposal sites in Woodland Township, New Jersey. The sites were later listed on the National Priority List by the United States Environmental Protection Agency and designated prime cleanup targets by the New Jersey Department of Environmental Protection (DEP).

In attempting to have the sites cleaned, the DEP invoked the New Jersey Spill Act, which imposes strict liability, "jointly and severally, without regard to fault, for all cleanup and removal costs" on "[a]ny person who ... is in any way responsible for any hazardous substance which the [DEP] has removed or is removing." N.J.Stat. Ann. 58:10–23.11g(c). In 1983, the DEP informed the Minnesota Mining and Manufacturing Company (3M) and the Rohm and Haas Company (R & H) that it suspected them of being partially responsible for dumping at these sites.[1] After years of negotiations, on March 5, 1985, the DEP issued directives to 3M and R & H requiring the companies to pay $880,000 within 7 days for the necessary Remedial Investigation/Feasibility Study regarding cleanup of these sites. It also reserved the right to seek additional compensation and further relief. Under the Spill Act, if the companies failed to comply with these directives and were ultimately found responsible, they would be subject to liability in an amount equal to three times the cost of the removal. N.J.Stat.Ann. 58:10–23.11f(a). On its face, the Spill Act offers no means of avoiding such treble damages—other than compliance with a directive—short of total vindication in an enforcement proceeding.

3M and R & H refused to comply with the directives, and sought an administrative hearing. The DEP denied the request for a hearing on the grounds that the Spill Act does not require pre-enforcement review. The companies then filed suit in the United States District Court for the District of New Jersey, seeking declaratory and injunctive relief.[2] They argued that they were forced to choose between 1) paying the amount demanded in the directives or 2) defying the directives and defending themselves in an enforcement proceeding, thereby running the risk of treble damages. In their view, there was no other mechanism by which they could realistically challenge the DEP's directives. They contended that the combined effect of the absence of pre-enforcement review, the threat of treble damages for noncompliance with DEP directives, and the lack of an alternative means of contesting those directives result in unconstitutional coercion.

The district court concluded that the companies did have an alternative: They could pay the amount demanded and then

---

1. Another suspected contributor to the sites, Hercules, Inc., settled with the DEP and is not a party to this litigation. The Woodland Private Study Group, the first-named plaintiff, is not a suspected dumper, but rather was formed by 3M and R & H to study the Woodland sites.

2. Purex Industries, Inc., another suspected contributor to the Woodland sites, was permitted to intervene as a plaintiff. Its complaint in intervention is virtually identical to the original plaintiffs' complaint and it has not submitted separate arguments in this court. For convenience, this opinion refers to all plaintiffs-appellants as "the companies."

seek reimbursement of that amount in an arbitration procedure established by the Spill Act. *See* N.J.Stat.Ann. 58:10–23.11n. The court also concluded that this remedy was consistent with due process, and therefore granted summary judgment in favor of the defendants. 616 F.Supp. 794 (D.N.J. 1985). The companies appealed to this court.

## II

This court heard argument on the appeal on October 16, 1986. A few days later, the New Jersey Supreme Court granted certification in cases presenting both state and federal constitutional challenges to the Spill Act. *In the Matter of the Directive of the New Jersey Department of Environmental Protection, Issued to Kimber Petroleum, certif. granted,* 105 N.J. 569, 523 A.2d 200 (Oct. 20, 1986); *In the Matter of the J.I.S. Industrial Service Company Landfill, certif. granted,* 105 N.J. 569, 523 A.2d 200 (Oct. 20, 1986). Since it appeared that the New Jersey Supreme Court's construction of New Jersey law might narrow or avoid the constitutional issue presented in this appeal, we decided to await the decision of that court and so informed the parties in November 1986.

On April 18, 1988, the New Jersey Supreme Court decided *Kimber Petroleum,* 110 N.J. 69, 539 A.2d 1181; and *J.I.S.,* 110 N.J. 101, 539 A.2d 1197. The court noted that the United States Supreme Court "has never before ruled on the constitutionality of a statutory enforcement scheme that combined, as the Spill Act does, joint and several liability, nearly absolute liability, the virtual elimination of substantive defenses, mandatory treble damages, and no pre-enforcement hearing." *Kimber Petroleum,* 110 N.J. at 79, 539 A.2d at 1186. It also noted that state law has, in some circumstances, been read to grant greater protection than the federal constitution. *Id.* at 81, 539 A.2d at 1187. In light of these concerns, the court engaged in what it called "judicial surgery." *Id.* at 83, 539 A.2d at 1188; *see also J.I.S.,* 110 N.J. at 112, 539 A.2d at 1203 ("modification of the strict statutory provisions ... required to obviate constitutional objections"). The court added a "good faith defense" mod-

eled on the federal Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9607(c)(3) (1982); *see Solid State Circuits, Inc. v. United States,* 812 F.2d 383 (8th Cir.1987). With this addition, "treble damages need not be assessed if the party opposing such damages had an objectively reasonable basis for believing that DEP's directive was either invalid or inapplicable to it." *Kimber,* 110 N.J. at 83, 539 A.2d at 1188.

## III

In response to this court's invitation, the parties have filed letters regarding the impact of the *Kimber* and *J.I.S.* decisions on this appeal. All agree that the Spill Act, as modified by the New Jersey Supreme Court, is in conformity with the federal constitution. Since there is no longer a live controversy between the parties arising under federal law, the case is moot. Accordingly, the judgment of the district court will be vacated and the case remanded with instructions to dismiss the complaint as moot.

